**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JOHN LEWIS,**

      **Plaintiff,**

**v.**                                        **Case No. 8:14-cv-920-T-17TBM**

**CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. Plaintiff claims error in the ALJ's residual functional capacity assessment. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

**A.**

Plaintiff applied for disability benefits and Supplemental Security Income in February 2010, alleging disability as of November 6, 2009. (R. 265-79). His administrative filings claim disability because he was a slow learner, and had problems focusing, anger problems, problems with his hands and shoulders, and problems with sleeping. Plaintiff's applications were denied originally and on reconsideration.

Plaintiff received a first *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). By decision dated October 21, 2011, the ALJ denied the claim. (R. 97-110).[1] In January 2012, the Appeals Council granted review and remanded the decision for further development of the record related to Plaintiff's intellectual functioning. (R. 115-20). The Appeals Council found error in the ALJ giving "little weight" to an opinion of a single decision maker and in the lack of full consideration of the listing at 12.05C, and ordered a remand. (R. 117).

The administrative hearing on remand was conducted August 16, 2012. (R. 57-81). Plaintiff was represented by counsel and testified on his own behalf. He was forty-five (45) years of age at the time of the administrative hearing, stands 5' 9", and weighed 200 pounds. He testified that he graduated high school but was a slow learner and took special education courses. He claimed that he had received SSI until he turned nineteen years of age. Since then, he has worked in maintenance at a mobile home park, at a lumber yard, as an electrician's helper, and a truck driver. He still holds a commercial driver's license. He claims a friend helped him with that test.

He last worked in 2005 when sheets of glass fell on him breaking his left collarbone. It did not heal right and he has a lot of sharp pains. He claims he cannot work because he would not be able to use his left arm and hand. He is right-handed. When he drives trucks, it

---

[1]This decision reflects the ALJ's review of the then-available medical evidence. After considering the same, the ALJ credited Plaintiff with severe conditions related to status post fracture of left clavicle with residual deformity, history of borderline intellectual functioning and depression and assessed Plaintiff capable of a limited range of light exertional work. With testimony from a vocational expert, the ALJ concluded that Plaintiff could do other work available in the national economy and thus was not disabled. (*Id.*).

takes both hands and he gets sharp pains in his left arm.  He demonstrated that he can raise his left hand above his head with his elbow raised to shoulder level, but to do so causes pain.  He can raise it all the way up "no problem," but it hurts.  Reaching out, up, and lifting with his left arm cause pain.  He takes Aleve for the pain and it helps a little bit.  He uses ice packs four days out of a week and that eases it a lot.  He can't sleep comfortably.  He is not receiving care for any other physical condition except his left shoulder.

He can lift twenty pounds.  His right leg sometimes hurts when he sits and he has to get up and move about.  He can stand for a couple of hours and can walk about a block or more if he has to.  He drives a pick-up to go the store, take his wife to the doctor, and visit with family.  He can read but doesn't understand the harder parts.  He can't pronounce words correctly due to a speech defect.  He sometimes has difficulty remembering things.  He gets angry and has a "split personality" and "[goes] off real bad."  He watches television and tries to help his wife around the house.

He also feels depressed.  He last saw a mental health provider prior to his last hearing in 2011.  (R. 59-78).

Barry J. Brown, a vocational expert ("VE") testified next.  After classifying Plaintiff's past work, the VE testified on a hypothetical which assumed a person of Plaintiff's age, education, and work experience, capable of a full range of light exertional work, but no climbing ladders, scaffolds, ropes, or work at unprotected heights; occasional overhead reaching with the left arm; and limited to understanding and carrying out only simple, routine, repetitive instructions and procedures, with the ability to adjust to only simple changes in the work environment and to make basic work-related decisions.  By the VE's account, a person

with such limitations could perform many unskilled light jobs including jobs such as cleaner, machine tender, and merchandise marker. Each is a light, unskilled job, but requires a consistent pace. If such person was off task fifteen percent of the workday, such work would not be available. As each of the jobs demands frequent reaching, none would be available if the person was limited to occasional reaching outward. (R. 78-81).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of September 26, 2012, the ALJ again determined that while Plaintiff has severe impairments related to borderline intellectual functioning/mild retardation, depression, and status post fractured left clavicle with residual deformity, he nonetheless had the residual functional capacity to perform a limited range of light exertional work. (R. 43, 45-47). Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could not perform his past work, but could perform jobs available to him in the local and national economy. (R. 47-49). On this conclusion, the Plaintiff was determined to be not disabled. (R. 49). The Appeals Council denied Plaintiff's request for review (R. 1-7), and the ALJ's decision became the final decision of the Commissioner.

**B.**

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms

4

of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

Plaintiff raises two claims on this appeal. First, Plaintiff urges that the ALJ's assessment that he could perform light work with occasional overhead reaching with the upper left non-dominant extremity is not based on substantial evidence. Second, he urges the ALJ's assessment that he could perform unskilled work with the ability to adjust to simple changes in the work environment and make simple work-related decisions is also not based on substantial evidence.

Both claims challenge the ALJ's residual functional capacity ("RFC") assessment. As noted above, the ALJ credited Plaintiff with severe impairments related to borderline intellectual functioning/mild retardation, depression, and status post fractured left clavicle with residual deformity. In assessing Plaintiff's RFC, the ALJ concluded:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: no climbing of ladders, ropes, or scaffolds, or exposure to unprotected heights; no more than occasional overhead reaching with the upper left non-dominant extremity; only able to understand and carry out simple, routine, and repetitive instructions and procedures, with the ability to adjust to only simple changes in the work environment; and able to make basic work-related decisions.

(R. 45).

Under the Regulations, residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his/her impairments. 20 C.F.R. § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the

6

medical consequences thereof.  *Lewis* at 1440.  In evaluating a claimant's RFC, the ALJ is obliged to consider all the evidence of record and all of the claimant's impairments, including subjective symptoms such as pain.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The final responsibility for deciding a claimant's RFC is with the ALJ.  20 C.F.R. §§ 404.1527(d), 416.927(d).

On the first claim, Plaintiff urges that "medical opinions in the file support a finding that Plaintiff is more [physically] limited that (sic) the ALJ's assessed RFC;" the ALJ "cherry-picked" the evidence to reach his conclusion; and makes no attempt to explain the conclusion that Plaintiff could reach in all directions with his left arm, other than overhead. (Doc. 18 at 12).  He cites Dr. Morford's opinion that due to the left clavicle fracture Plaintiff would be limited in his ability to reach in all directions (including overhead) and his opinion that Plaintiff was limited to zero to occasional overhead use of his left arm.  He complains that "[t]he ALJ does not address anywhere … why he chose to accept Dr. Morford's opinion that Plaintiff can reach overhead occasionally, but not reaching in all directions.  The ALJ's assessed left upper extremity limitation is not based on any medical opinion in the record." (*Id*. at 13).  As a consequence, Plaintiff asserts that he is left not knowing why he was denied benefits.  (*Id*. at 14).

In response, the Commissioner initially notes that because Dr. Morford is a nonexamining doctor, his opinions are not entitled to special deference or consideration but may be relied upon by the ALJ when supported by the evidence.  In any event, she argues the ALJ's decision is consistent with the doctor's opinions.  Thus, while the doctor did check a box indicating that Plaintiff was limited in reaching in all directions including overhead, he

7

described the limitation noting, "0 to occasional overhead use LUE." (R. 693). By the Commissioner's argument, the doctor's opinion is logically read to mean Plaintiff is only limited to no more than occasional overhead reaching with no additional reaching limitation. Moreover, the Commissioner notes that such reading is consistent with the examination findings of Dr. Guillermo Suarez. (R. 650). Thus, Plaintiff misreads Dr. Morford's opinion, and his reading is inconsistent with the medical record, as well as Plaintiff's self-reports that he could bathe, dress, groom himself, cook, clean, grocery shop, and drive. (Doc. 19 at 4-8).

After considering the decision in light of the whole of the record, I find no error requiring relief on this first claim. Significantly, Plaintiff fails to demonstrate from the medical record that he is more physically limited than as assessed by the ALJ, and his citation to the functional assessment by the nonexamining doctor, Donald Morford, M.D., to support the claim is unconvincing.[2]

Initially, I think that Plaintiff misreads the assessment by Dr Morford. This doctor did not find that Plaintiff could not reach in any direction with his left arm. Indeed, he made no comment on Plaintiff's general ability to reach, but simply checked the available box indicating Plaintiff had a manipulative limitation in reaching, which he described as "0 to occasional overhead use [left upper extremity]." (R. 693). I find this reading consistent with

---

[2]As noted above, the medical record as it then existed was addressed in some detail by the ALJ in the first decision. Given that the Appeals Council found no errors in the ALJ's assessment of that medical record, the ALJ here adopted that analysis, including his assessment of the opinion evidence. (R. 47). Findings of the ALJ related to Drs. Morford and Suarez are found in the first decision at R. 104-06. Concerning their opinions, the ALJ stated that he "accepts most of the limitations indicated by Dr. Morford's opinion" but he "rejects his view the claimant is limited to no more than occasional crawling." (R. 106). As for Dr. Suarez, the ALJ gave "significant weight" to his findings and observations. (*Id*.)

8

the evidence cited in Dr. Morford's RFC assessment – in particular, the examination findings of Guillermo Suarez, M.D., who found Plaintiff's range of motion in the left shoulder reduced by over forty percent. (R. 649).[3] Indeed, Dr. Morford expressly quotes from Dr. Suarez's findings before assessing Plaintiff's ability to reach given the residuals of his left clavicle fracture. (R. 691). By my consideration, the findings and limitations suggested by Drs. Morford and Suarez are fairly reflected in the ALJ's RFC assessment for light work involving no climbing which might require use of the arms and no more than occasional overhead reaching with the left arm. When the decision is read in light of the testimony at the administrative hearing, it fairly reflects the conclusion that Plaintiff could reach with both arms/hands, but was limited functionally in reaching overhead with his left arm. Moreover, the decision reflects an adequate statement by the ALJ explaining the weight afforded the opinions from these doctors.

As noted above, it is the task of the ALJ to evaluate and weigh the medical evidence. This court's review of the factual findings is deferential. Here, I am obliged to conclude that the ALJ's assessment of Plaintiff's ability to reach with his left arm is consistent with findings concerning his left shoulder injury and supported by substantial evidence. Plaintiff himself testified that he could raise his left arm up "no problem" but at some point he feels pain. (R. 66). He testified as well that he was right hand dominant and could lift twenty pounds. (R. 65, 72). While Dr. Suarez found a reduced range of motion in the left shoulder, he ascribed

---

[3]Dr. Suarez's range of motion report found Plaintiff had full range of motion in all areas except the left shoulder where he found significant limitations in the upward movement of the left arm. (R. 650-51).

no other functional limitations.  Moreover, Dr. Suarez's report appears fairly read by Dr. Morford.  No other significant physical impairment is documented.  Plaintiff offers no contrary medical or other evidence to suggest greater limitations.  Thus, while his physical limitations may well prevent him from returning to prior medium exertional jobs, the RFC assessment and the VE's testimony support the availability of light exertional work of the type not requiring more than occasional overhead reaching with his left arm.

Concerning the ALJ's rationale, such is adequately stated.  Upon consideration of the medical record, the ALJ concluded that Plaintiff's subjective claims were overstated.  While Plaintiff claimed that his left shoulder pain had gotten worse, the ALJ found no new objective evidence to support the claim.  The ALJ further explained that to accommodate the radiating pain in the left arm he limited Plaintiff "to performing light work that does not involve climbing and involves no more than occasional overhead reaching using the left upper extremity."  (R. 47).  While Plaintiff disagrees with the findings and conclusions, he fails to show from the medical record that they are not supported by substantial evidence.

In sum, while Plaintiff urges the ALJ should have assessed an inability to reach in any direction with his left arm, he fails to demonstrate support for such limitation or an error requiring relief on this claim.

By the second claim, Plaintiff argues that he is more limited by his mental impairments than as assessed by the ALJ.  Contrary to the ALJ's conclusion, he asserts that his impairments are disabling.  In support, he cites to the assessments of Drs. Alidon and Van Ingen.  In addition to finding that Plaintiff suffered moderate limits in understanding, remembering, and carrying out detailed instructions and maintaining attention and

10

concentration for extended periods, Dr. Alidon found Plaintiff capable of interacting appropriately on a limited basis but noted he may have problems with intense/prolonged social contact. By this doctor's opinion, Plaintiff would work better in a job with minimal distractions in a more structured, supportive, and less stressful work setting. (R. 672-74). As for Dr. Van Ingen, he opined Plaintiff could understand and follow simple instructions with limitations for mild difficulty maintaining attention and concentration for tasks, and the need for structure to attend to a routine and maintain a schedule. (R. 644-46). Plaintiff complains that while the ALJ gave significant weight to both doctors' opinions, he did not include all Dr. Ingen's findings in his RFC and he "failed to address many of Dr. Alidon's opinions … regarding special accommodations that Plaintiff may need in the work setting." (Doc. 18 at 15). By this argument, these doctors' findings "point to a more mentally limited RFC than the ALJ found in his decision." (*Id.*). Here again, Plaintiff argues the ALJ "cherry-picked" information and failed to address the whole record. Accordingly, his mental assessment is not based on any medical evidence and the ALJ fails to explain why he arrived at this RFC. (Doc. 18 at 14-16).

In response, the Commissioner urges that substantial evidence supports the ALJ's conclusion that Plaintiff could do work involving no more than simple changes in the work environment; basic work-related decisions; and simple, routine, and repetitive instructions and procedures. As the ALJ noted, despite his borderline intelligence, Plaintiff was able to obtain a commercial driver's license, which required the ability to understand, remember, analyze, and answer complex questions. Moreover, the Commissioner notes Plaintiff's past work was semi-skilled work. And, his activities of daily living ("ADLs") support his ability

11

for simple work.  Contrary to Plaintiff's argument, the ALJ properly considered the reports of Drs. Ingen and Alidon, which support the mental RFC conclusions.  And, failure to address every detail of the two doctors' reports is no error.  Here, the Commissioner urges that the ALJ's RFC assessment based on all the evidence is supported by substantial evidence.  (Doc. 19 at 8-13).

Initially, I find that by any fair reading the reports of Drs. Ingen and Alidon support the ALJ's mental RFC for simple, routine, repetitive work, and Plaintiff does not show otherwise.  To the extent that Plaintiff complains that the reports show greater limitations than as assessed by the ALJ, I again conclude such is not demonstrated.

The examination report by psychologist, Daniel Van Ingen, Psy.D., is replete with generally normal findings and Plaintiff's self-reports that offer substantial support for the ALJ's conclusions.  (R. 644-47).  According to the Medical Source Statement, Dr. Van Ingen found:

> Vocationally, the claimant appears to be capable of understanding and following simple instructions and directions. He appears to be capable of performing simple tasks independently and most familiar complex tasks independently. He appears to have some mild difficulty maintaining attention and concentration for tasks. He would need structure to attend to a routine and maintain a schedule.  He appears to be capable of learning new simple tasks, but may have difficulty with complex tasks. He appears to retain a good capability for making appropriate decisions. He seems able to relate to and interact appropriately with others. He appears to be capable of dealing with routine daily stress.

(R. 646).

Plaintiff vaguely complains that the ALJ failed to include all this doctor's findings in his RFC.  By my review, the decisions reflect the ALJ's fair consideration of Dr. Ingen's report in connection with consideration of the listing at 12.05C, Plaintiff's credibility, and

12

Plaintiff's RFC assessment. (R. 43-45, 100-01, 103-07). Without some articulation of his argument, the Court is left to speculate which finding(s) by this doctor were left out and, more importantly, the functional import of such missing findings.

However, by my reading, the ALJ has given a fair reading to the findings of this doctor in assessing the mental RFC. As urged by the Commissioner, it is no error that the ALJ did not expressly recite every finding set forth in the report[4] and, contrary to Plaintiff's argument, I find no evidence that the ALJ cherry-picked from this examination report to support an inappropriate conclusion. Most significantly, this argument fails to demonstrate from this report functional limitations not adequately accounted for by the ALJ's mental RFC.

As for the mental RFC assessment by the nonexamining doctor, Gildegardo Alidon, it appears that counsel is the one cherry-picking the findings. By this doctor's review of the records, Plaintiff was not disabled by reason of his borderline intellectual functioning. Rather, he remains capable of understanding, remembering, and carrying out short simple instructions and tasks as reflected in his activities of daily living and mental status evaluation. (R. 674). While Plaintiff correctly recites that this doctor opined that Plaintiff had moderate limits in his ability to understand, remember, and carry out *detailed* instructions; maintain attention and concentration for *extended* periods; and set realistic goals, the ALJ's mental RFC assumes the capacity for only simple, routine, and repetitive work instructions and procedures, not detailed, complex tasks. As this reviewing doctor notes, such conclusion is supported by the prior mental status evaluation, Plaintiff's self-report of his activities, and

---

[4]*See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

13

indeed his past work history, which equally suggest that he has the capacity for the type simple, routine, repetitive work assessed by the ALJ.[5]  While the doctor did opine that Plaintiff might have a problem with *intense/prolonged* social contact, he was able to interact appropriately on a limited basis.  And, as the ALJ noted, the doctor assessed Plaintiff with only *mild* limitations in social interaction.  (R. 44, 673).  As for Dr. Alidon's statement that Plaintiff would work better in a job with minimal distractions, more structure, less stress, with good communication of instructions on tasks he has not done before, such appear vocational considerations not medical opinions related to his mental RFC.  Here, the ALJ's mental RFC found Plaintiff capable of adjusting to *only* simple changes in the work environment and making *basic* work-related decisions.  In his report, Dr. Van Ingen noted that Plaintiff's thought processes were coherent and goal-directed.  (R. 645).  He found Plaintiff with a good capacity for making appropriate decisions, the ability to relate to and interact appropriately with others, and with dealing with routine daily stress.  (R. 646).  These latter findings were expressly repeated by the ALJ and given significant weight in the prior decision.  (R. 107).  For these reasons, I find that Plaintiff does not specify or otherwise demonstrate that the ALJ failed to include limitations in his mental RFC which are required by this mental health record.

   I think it appropriate to again note that Plaintiff testified that he quit working his semi-skilled medium exertional job because of the injury to his shoulder and the resulting pain in his left arm and hand, not because of mental limitations.  While he testified that he was a slow

---

[5]Additional insight into this doctor's review of the medical and other record is revealed in his PRT form (R. 676-689), in particular, his notes at section IV (R. 688).

14

learner in school, and he unquestionably has limitations due to his borderline intellectual functioning, his work history suggests he had adapted to several work settings in his past work, all of which were semi-skilled work according to the VE. In his most recent work as a driver, he passed the CDL written test on two tries. By his own reports, he maintained a relatively active daily regimen. And, by every mental health record in his file,[6] Plaintiff was vocationally capable of following simple routine instructions and, by the two reports he cites, capable of carrying out such instructions in the work place. While the Plaintiff argues that he is more limited in his mental functioning than as assessed by the ALJ, he fails to identify the mental limitation not accounted for. As indicated above, the task of determining a claimant's RFC falls on the ALJ and is based on a review of the whole record. Here, I am obliged to conclude that the mental health record provides ample support for the ALJ's mental RFC. And, according to the VE, even with these limitations, there are many unskilled light exertional jobs available to Plaintiff. On this claim, Plaintiff fails to demonstrate that the mental RFC does not fairly and fully account for his limitations or that the ALJ erred in concluding that he was not disabled.

---

[6]In addition to reports by Drs. Ingen and Alidon, the record contains a report by Linda Appenfeldt, Ph.D., who evaluated Plaintiff and administered an intelligence test. While noting cognitive limitations, she too indicated that Plaintiff was capable of understanding and following simple instructions and directions. (R. 668-70). The record also contains another PRT form completed by Sharon Ames-Dennard, Ph.D., who found evidence of only mild limitations and no severe mental impairment. (R. 654-67).

15

**D.**

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I **RECOMMEND** that it be **AFFIRMED.** I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

                                           Respectfully submitted this
                                           4th day of May 2015.

                                           THOMAS B. McCOUN III
                                           UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D.Fla. R. 4.20.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record